**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-02408-CMA-KMT

SENAD GLUHIC,

      Plaintiff,

v.

SAFEWAY, INC.,

      Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Safeway Inc.'s ("Safeway")

Motion for Summary Judgment.  (Doc. # 18.)  Pursuant to his Complaint (Doc.

# 1), Plaintiff Senad Gluhic ("Mr. Gluhic") brings five claims for relief under Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112.  Mr. Gluhic also

brings a sixth state law claim for wrongful discharge in violation of public policy.

Jurisdiction is proper under 28 U.S.C. § 1331.

## I.  <u>BACKGROUND</u>

The following facts are undisputed, unless otherwise noted.[1]  The Court

will elaborate, as needed, in its analysis section.

---

[1] As Safeway correctly observes, Mr. Gluhic's Response does not comply with this
Court's Practice Standards.  Specifically, any party opposing a motion for summary
judgment is required to provide a section:

Mr. Gluhic, a Muslim man originally from Bosnia, was hired by Safeway's Denver Bread Plant ("Bread Plant") on April 11, 2007.  (Doc. # 18 at 2; Doc. # 24 at 2.)  Mr. Gluhic has a speech impediment caused by a brain tumor and is unable to speak English well.  (Doc. # 24 at 2.)  On December 2, 2007, Mr. Gluhic became a full-time Checker/Loader in the Bread Plant's Shipping Department.

While employed at the Bread Plant, Mr. Gluhic received a booklet concerning policies and rules relating to the Bread Plant, including the Plant Rules, Safeway's Good Manufacturing Practices, and Safeway's Harassment Policy.[2]  (Doc. # 18 at 2-3.)  The Plant Rules describe different actions and behaviors that "are detrimental to the general operations of the plant for which an employee may be subject to disciplinary action up to and including termination." The prohibited actions and behaviors include the "[f]ailure to cooperate in maintaining sanitary conditions on Company property" or "[t]hreatening in any way . . . the person or property of any other individual."  (Doc. # 18-3 at 2-3.)

---

admitting or denying the asserted material facts set forth by the movant. The admission or denial shall be made in paragraphs numbered to correspond to movant's paragraph numbering.  Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record which establishes that fact.

CMA Civ. Practice Standards III.G.5.  Instead of following this required format, Mr. Gluhic's Response contains numerous "disputes" that are not supported by specific reference to evidence in the record.  Moreover, Mr. Gluhic's disputes do not correspond to Safeway's paragraph numbering, which makes it difficult for the Court to review what facts are actually in dispute.  The Court's Practice Standards are not optional but mandatory.  Thus, the Court will not consider any facts alleged by Mr. Gluhic that are not supported by citation to specific evidence found in the record.

[2] Mr. Gluhic disputes that he received these documents, but does not provide any evidence in support of this contention.   Further, he testified at his deposition that he had signed for and received these documents.  (Doc. # 25-1 at 25:1-8, 25:19-26:1, 26:9-17.)

The Good Manufacturing Practices form expressly states that "[s]pitting is not allowed in the general plant or processing areas." (*Id.* at 8.) Safeway's Harassment Policy prohibits harassment and instructs employees that have seen or experienced any form of harassment or inappropriate conduct to "immediately report the situation" to a manager, supervisor, human resources representative, or a toll-free hotline. (*Id.* at 10.)

During his tenure at the Bread Plant, Mr. Gluhic reported several incidents to Shipping Supervisor Pat Jones concerning derogatory comments or conduct by Mr. Gluhic's co-workers. The first incident occurred in November of 2008 when Mr. Gluhic was pushed by an anonymous employee and fell to the floor. That employee was fired approximately three hours after Mr. Gluhic reported the incident to Mr. Jones. (Doc. # 18-2 at 11:19-23.) Also in November of 2008, Mr. Gluhic and one of his co-workers, Min Oo, had an altercation outside of the Bread Plant where Mr. Oo "start[ed] insulting [Mr. Gluhic] again regards to [his] race, as well, he start spitting out the window."[3] (*Id.* at 14:5-10.). Mr. Gluhic reported the incident to Mr. Jones. According to Mr. Gluhic:

> I said Min in the streets, and then I was using my hands to gesture to the spitting, and then [Mr. Jones] gave me a couple options, couple of words because he was trying to help me to remember the words that I wanted to say. And when he said spitting, then I said yes.

(*Id.* at 15:6-11.)

---

[3] Mr. Gluhic is not a native English speaker and, by his own admission, "doesn't speak English well." (Doc. # 24 at 2.) Thus, many of the quotes taken from Mr. Gluhic's deposition contain grammatical errors. In the interest of precision, the Court will quote Mr. Gluhic with minimal alteration.

Another time in late 2008, Mr. Gluhic complained to Mr. Jones that Mr. Oo was "swearing on my mother every day and on my religion." (*Id.* at 12:11-16.) Mr. Jones then spoke with Mr. Oo and gave him a "last reminder" concerning his behavior. Sometime in 2009, Mr. Gluhic complained to Mr. Jones that Mr. Oo screamed "[m]otherf****r Muslim" at him. (*Id.* at 17:17-21.) Although Mr. Gluhic did not know whether Mr. Jones spoke with Mr. Oo after this incident, roughly one or two hours later, Mr. Jones visited the work area "to check in on [Mr. Gluhic's] workplace to see if everything is okay." (*Id.* at 19:3-8.)

In November or December of 2009, Mr. Gluhic reported to Mr. Jones that co-worker Mario Espinoza had called him a "mother****r Muslim" and stated "Muslim is a terrorist and Bosnia people is terrorist." (*Id.* at 20:22-25.) Mr. Jones told Mr. Gluhic that he would speak with Mr. Espinoza and that his comments would never be repeated. Mr. Gluhic testified, however, that Mr. Espinoza made similar comments the next day. (*Id.* at 21:1-5.)

Mr. Gluhic's final complaint to Mr. Jones occurred in January of 2010, regarding comments made by his co-worker, Brook Asfaw, who is from Africa. (*Id.* at 21:14-25.) At the time, Mr. Gluhic was frequently visiting a doctor and was having his blood drawn. (*Id.* at 22:7-13.) Mr. Gluhic reported to Mr. Jones that Mr. Asfaw had "told me I am use drugs and he say I am old too." (*Id.* at 23:6-10.)

At approximately 10:30 p.m. on March 4, 2010, Mr. Asfaw complained to Production Supervisor Allen Gebers that Mr. Gluhic had cursed at him and spat in his face. (Doc. # 18-1 at 5.) Mr. Gebers interviewed Mr. Gluhic, who said that Mr. Asfaw had been cursing first and that he had only returned the same

treatment.  Mr. Asfaw denied starting the altercation.  (*Id.*)  Mr. Gebers sent both employees home, and reported the issue via email message to Plant Superintendent Nathan Smith.  (*Id.*)  During the next week, Mr. Smith investigated Mr. Asfaw's complaint by interviewing several Bread Plant employees and reviewing written statements by employees.  (*Id.*, ¶ 6.)  Ruben Rodriguez, who worked with both Mr. Asfaw and Mr. Gluhic, told Mr. Smith that Mr. Gluhic had made several negative comments to Mr. Asfaw regarding Africa over the days preceding the March 4, 2010 incident.  (*Id.*, ¶ 10.)  Mr. Oo also told Mr. Smith that Mr. Gluhic had made derogatory comments to Mr. Asfaw regarding Africa, and said that, while he did not see Mr. Gluhic spit on Mr. Asfaw, he later saw the spit on Mr. Asfaw's face.  (*Id.*, ¶ 11.)

Mr. Smith also interviewed Mr. Gluhic, who "admitted to spitting at Mr. Asfaw while on the shipping floor but claimed Mr. Asfaw had spit at him first." (*Id.*, ¶ 7.)  Mr. Asfaw told Mr. Smith that Mr. Gluhic had started the incident by calling him a "bitch" and making comments regarding Mr. Asfaw's father. Mr. Asfaw said that Mr. Gluhic had spat on him when he asked him to stop making such comments, but denied ever having spit at Mr. Gluhic.  (*Id.*, ¶ 8.)

Based on his investigation, Mr. Smith made the decision to terminate Mr. Gluhic's employment with Safeway because Mr. Gluhic had admitted to spitting on Mr. Asfaw on the shipping floor.  (Id., ¶ 12.)  Mr. Asfaw was suspended without pay for three days for approaching Mr. Gluhic to ask him to stop his insults as opposed to reporting the issue to his supervisor.  (Id., ¶ 13.) However, Mr. Asfaw was not terminated, as the only evidence supporting

Mr. Gluhic's claim that Mr. Asfaw had spit at him was Mr. Gluhic's own belated allegation, which Mr. Asfaw denied.  (*Id.*)

Mr. Gluhic initiated this civil action by filing his Complaint on September 13, 2011.  (Doc. # 1.)  Safeway filed the instant Motion for Summary Judgment on August 16, 2012.  (Doc. # 18.)  Mr. Gluhic responded on September 26, 2012, and Safeway replied on October 9, 2012.  (Doc. ## 24, 25.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* at 670-71.  In attempting to meet that standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for

the other party on an essential element of that party's claim.  *Id*. at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.  *Id*.  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*.

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III. ANALYSIS

### A.   NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION CLAIMS

Mr. Gluhic alleges that he was discriminated against on the basis of his national origin and religion.  (Doc. # 1, ¶¶ 60-67.)  Because Mr. Gluhic attempts to prove these two discrimination claims through circumstantial evidence, the Court applies the familiar *McDonnell Douglas* burden-shifting analysis.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Under the *McDonnell Douglas* framework, Mr. Gluhic must first establish a *prima facie* case of national origin or religious discrimination by Safeway. *See Khalik*, 671 F.3d at 1192.  If Mr. Gluhic can do so, the burden shifts to Safeway to articulate a legitimate non-discriminatory reason for the adverse employment action.  *Id.*  If Safeway articulates such a reason, the burden shifts back to Mr. Gluhic to demonstrate that Safeway's proffered reason is pretextual. *Id.*

To establish a *prima facie* unlawful discharge case, Mr. Gluhic must establish that: (1) he belongs to a protected class, (2) he was qualified to perform his job, (3) he was terminated, and (4) the circumstances surrounding his termination gave rise to an inference of discrimination.  *Baltazar v. Shinseki*, 485 F. App'x 941, 946 (10th Cir. 2012).  Safeway concedes that Mr. Gluhic meets the first and third elements of his *prima facie* burden for both claims, but contends that he fails to satisfy the second and fourth elements.  Although the Court finds that there are disputed issues of material fact with regard to the second element, the Court agrees with Safeway that Mr. Gluhic fails to present sufficient evidence that the circumstances surrounding his termination give rise to an inference of discrimination.[4]

---

[4] The Tenth Circuit has observed that the fourth element of the *prima facie* burden applicable in cases such as this one involves an inquiry similar to the one concerning a plaintiff's burden of demonstrating pretext.  *Baltazar*, 485 F. App'x at 946.  Thus, Mr. Gluhic's failure to show that the circumstances surrounding his termination give rise to an inference of discrimination also means that he cannot show that Safeway's legitimate, non-discriminatory reason for terminating him – spitting at Mr. Asfaw – was pretextual.

A plaintiff can establish evidence of the fourth prong in a variety of ways, "such as 'actions or remarks made by decisionmakers,' 'preferential treatment given to employees outside the protected class,' or 'more generally, upon the timing or sequence of events leading to plaintiff's termination.'" *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)).   Safeway maintains that Mr. Gluhic was terminated because he spat on Mr. Asfaw while at the Bread Plant during their March 4, 2010 altercation.

In his Response, Mr. Gluhic contends that he has presented evidence of disparate treatment because Safeway did not fire Mr. Oo for spitting at Mr. Gluhic in 2008, nor did Safeway fire Mr. Asfaw for spitting on Gluhic in 2010.[5]   However, by Mr. Gluhic's own admission, Mr. Oo spat at him "in the streets," outside of the workplace.  (Doc. # 18-1 at 15:6-11.)  Thus, unlike Mr. Gluhic, Mr. Oo did not violate the Good Manufacturing Practices, which expressly states that "[s]pitting is not allowed **in the general plant or processing areas**."  (Doc. # 18-3 at 8) (emphasis added.)   Because an outside of work incident is highly dissimilar to an incident that occurs at the workplace, Mr. Gluhic has not shown that Safeway treated Mr. Oo differently than him.  *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1367 (10th Cir. 1997).  Further, there is no evidence that Mr. Oo admitted to spitting on Mr. Gluhic.  With regard to Mr. Asfaw, Mr. Gluhic has presented no evidence, beyond his own belated and self-serving allegation, that

---

[5] Mr. Gluhic conclusorily asserts that "at least three different employees" were not terminated for violating Safeway's "supposed 'zero tolerance' harassment policy." (Doc. # 24 at 10.)  Even if true, Mr. Gluhic does not explain how this would provide an inference that Mr. Gluhic's termination was discriminatory.

Mr. Asfaw spat on Mr. Gluhic on March 4, 2010.  In contrast, Mr. Gluhic admitted

to spitting on Mr. Asfaw when he was interviewed immediately after the incident.

(Doc. # 18-2 at 36:2-7.)  Thus, Mr. Gluhic was the only employee who admitted

to spitting on a co-worker in the workplace and the fact that neither Mr. Oo nor

Mr. Asfaw was terminated does not provide an inference that Mr. Gluhic's

termination was discriminatory.

Viewing the evidence in the light most favorable to Mr. Gluhic, a

reasonable factfinder could determine that Mr. Asfaw was responsible for inciting

the altercation that occurred on March 4, 2010.  Even if true, the Court does not

sit "as a super personnel department that second guesses employers' business

judgment."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233 (10th

Cir. 2000).  Thus, "the issue is not whether the decision to terminate [Mr. Gluhic]

was wise, fair or correct, but whether [Safeway] reasonably believed at the time

of the termination that [Mr. Gluhic] had violated company policy, and acted in

good faith upon that belief."  *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106,

1120 (10th Cir. 2007).  As Safeway argues, Mr. Smith's rationale for not believing

that Mr. Asfaw had spit on Mr. Gluhic – that Mr. Gluhic did not make such a claim

when he was originally interviewed immediately after the altercation occurred – is

inherently reasonable.  Thus, the Court finds that Mr. Gluhic has failed to present

sufficient evidence that Safeway discriminated against Mr. Gluhic on the basis

of his religion or national origin when Safeway fired Mr. Gluhic for spitting on

Mr. Asfaw, and summary judgment is appropriate on these discrimination claims.[6]

## B.    DISABILITY DISCRIMINATION CLAIM

Mr. Gluhic also alleges that Safeway discriminated against him in violation of the ADA on the basis of his disability.  (Doc. # 1, ¶¶ 76-79.)  To establish a *prima facie* case of disability discrimination under the ADA, Mr. Gluhic must establish that: "(1) [he] was a disabled person as defined by the ADA; (2) [he] was qualified, with or without reasonable accommodation, to perform the essential functions of [his] job; and (3) [he] was fired because of [his] disability." *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 830 n.2 (10th Cir. 2011).  Safeway contends that Mr. Gluhic has not offered any evidence that he was fired because of his disability.  The Court agrees.

"The third prong of the [*prima facie*] test requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision, a burden that is not onerous but also not empty or perfunctory." *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Ctny., Okla.*, 232 F. App'x 765, 770 (10th Cir. 2007) (internal quotation marks and citation omitted).  Simply put, Mr. Gluhic has presented no "affirmative evidence" that Safeway discriminated against him on the basis of his speech impediment.  Instead, Mr. Gluhic argues, without citation to case law, that Safeway was negligent by

---

[6] Mr. Gluhic also relies on a finding from the Colorado Department of Labor that Mr. Gluhic was not at fault for his termination.  Again, the issue is not whether Mr. Gluhic was actually at fault, but whether Safeway had a good faith belief that Mr. Gluhic violated company policy.  *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1080 (10th Cir. 1999) (noting that the pertinent question is not whether the employer was right to believe that the employee engaged in misconduct, but whether the employer's belief was genuine and not pretextual).

failing to provide him with an interpreter to register his various complaints. However, the issue is whether Mr. Gluhic's disability was a determining factor in Safeway's decision to terminate his employment.  *Id.*  Proving that Safeway was negligent in some way is not sufficient to show that Safeway discriminated against Mr. Gluhic in its decision to discharge him from employment.  Thus, summary judgment is appropriate on Mr. Gluhic's disability discrimination claim.

## C.    HOSTILE WORK ENVIRONMENT CLAIM

Next, the Court considers Mr. Gluhic's claim that Safeway "promoted and condoned a hostile work environment."  (Doc. # 1, ¶ 73.)  In order to bring a hostile work environment claim, a plaintiff must show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (quotation omitted).  "Title VII does not establish a general civility code for the workplace . . . the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."  *Morris v. City of Colo. Springs*, 666 F.3d 654, 663-64 (10th Cir. 2012).  The test for a hostile work environment claim has both objective and subjective components.  *Id*. at 664.  Thus, the Court looks to whether Mr. Gluhic was offended by the work environment as well as whether a reasonable person would likewise be offended.  *Id.*  The Court determines whether an environment is hostile or abusive by examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993).

During his deposition, Mr. Gluhic recounted several incidents that he claimed were indicative of religious or national origin discrimination.[7] The first incident occurred in November of 2008 when Mr. Gluhic was pushed by an anonymous employee. (Doc. # 18-2 at 11:7-12.) Although Mr. Gluhic asserts in his Response that the anonymous employee was "harassing [Mr.] Gluhic based on his religion and disability," Mr. Gluhic fails to present any evidence that he was pushed because of his religion or disability. (Doc. # 24 at 14.) Thus, Mr. Gluhic has not shown that this incident of harassment stemmed from any discriminatory animus. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) ("General harassment if not [discriminatory] is not actionable."). Moreover, Safeway took immediate action to address this unacceptable behavior by terminating the anonymous employee approximately three hours after Mr. Gluhic reported the incident.

Mr. Gluhic has presented evidence that his co-workers made some derogatory comments about Mr. Gluhic's religion and/or his national origin. Viewing the evidence in the light most favorable to Mr. Gluhic, Mr. Oo called Mr. Gluhic a "mother****r Muslim" in late 2008 and again in 2009. (Doc. # 18-2

---

[7] Mr. Gluhic also complained to Mr. Jones that Mr. Asfaw accused him of using drugs and called him old. (Doc. # 18-2 at 23:8-10.) Although Mr. Gluhic may have been offended by this comment, the Court does not perceive how this comment exhibits religious, national origin, or disability animus by Mr. Asfaw. Thus, the Court will not consider this comment in determining whether Mr. Gluhic has presented sufficient evidence to show that he was subjected to a hostile work environment.

at 13:1-9; 18:19-25.)  Additionally, Mr. Oo accosted Mr. Gluhic "in the streets"
in November 2008, when Mr. Oo spat at Mr. Gluhic and insulted Mr. Gluhic
with "regard[] to [his] race."  (*Id.* at 14:5-10.)  Mr. Espinoza called Mr. Gluhic
a "mother****r Muslim" and stated "Muslim is a terrorist and Bosnia people is
terrorist" in November or December of 2009.  (*Id.* at 20:1-7; 20:20-25.)  And, on
March 4, 2010, Mr. Asfaw also called Mr. Gluhic a "mother****r Muslim" during
their confrontation.  (*Id.* at 33:10-15.)

Although it is regrettable that these incidents may have occurred, "a few
isolated incidents of sporadic slurs" do not make a sufficient showing of a
pervasively hostile work environment.  *Morris*, 666 F.3d at 666 (internal quotation
and citation omitted).  "Instead, there must be a steady barrage of opprobrious
comments."  *Id.*  The comments in this case were made sporadically over a
seventeen month period.[8]  Further, with the possible exception of the
confrontation between Mr. Oo and Mr. Gluhic, which did not take place in the
work environment, but rather, "in the streets," none of the alleged offensive
conduct appears to have been physically threatening.  Although the severity
and pervasiveness evaluation of a hostile work environment claim is usually a
question of fact, *see O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098
(10th Cir. 1999), summary judgment is appropriate if the complained of behavior
was not sufficiently pervasive to support a hostile work environment claim.  *See,
e.g.*, *Sprague*, 129 F.3d at 1365-66 (concluding that five separate incidents of

---

[8] At one point in his deposition, Mr. Gluhic suggests that Mr. Oo called him a
"motherfucker Muslim" every day.  (Doc. # 18-2 at 13:5-6.)  However, Mr. Gluhic
also testified that he complained to Mr. Jones "every time" a co-worker made such
comments, but recounted only the specific incidents described above.  (Id. at 9:18-19.)

allegedly sexually-oriented, offensive comments either directed at the plaintiff or made in her presence were not sufficiently pervasive to support a hostile work environment claim); *Morris*, 666 F.3d at 666 (finding that there was "insufficient evidence for a jury to find that the alleged harassment was pervasive."). The Court finds that Mr. Gluhic has failed to show that the alleged harassment was pervasive or serious enough to avoid summary judgment on his hostile work environment claim.

## D.   RETALIATION CLAIM

Mr. Gluhic also contends that his termination was in retaliation for complaining about discrimination to Safeway management. (Doc. # 1, ¶¶ 69-71.) To establish a *prima facie* case of retaliation, Mr. Gluhic must show that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between his opposition and the employer's adverse action. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). Although Mr. Gluhic engaged in protected opposition when he voiced complaints to Mr. Jones, and he suffered an adverse action when he was terminated, Mr. Gluhic has presented no evidence of any causal connection between his complaints to Mr. Jones and his termination by Mr. Smith. Further, Mr. Gluhic's last complaint to Mr. Jones about racial or national origin discrimination by Mr. Espinoza occurred in November or December of 2009, well before Mr. Gluhic was terminated. Thus, he cannot show a causal connection by temporal proximity alone. *See Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013)

("a three month period, standing alone, is insufficient to establish causation.").

Even assuming *arguendo* that Mr. Gluhic can establish a prima facie case of

retaliation, Mr. Gluhic fails to present any evidence that Safeway's legitimate,

non-discriminatory reason for his termination – his spitting in Mr. Asfaw's face

at work – was pretextual.  (*See supra*, § III.A.)

## E.   PUBLIC POLICY DISCHARGE CLAIM

Lastly, Mr. Gluhic brings a public policy wrongful discharge claim, alleging

that "Colorado law protects employees from retaliatory termination based on that

employee's exercise of a legal right or duty."  (Doc. # 1, ¶ 109.)  Because the

Court has disposed of all claims over which it has original jurisdiction, it declines

to exercise supplemental jurisdiction over Mr. Gluhic's final state law claim. *See*

28 U.S.C. § 1367(c)(3) (a federal court may decline to exercise supplemental

jurisdiction when it "has dismissed all claims over which it has original

jurisdiction."); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)

("When all federal claims have been dismissed, the court may, and usually

should, decline to exercise jurisdiction over any remaining state claims.").

Because the Court discerns no compelling reason why it should retain jurisdiction

of Mr. Gluhic's state law claim, the Court declines to exercise supplemental

jurisdiction over Mr. Gluhic's final state law claim, and thus, dismisses it without

prejudice.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.

2006) (dismissals for lack of jurisdiction should be without prejudice because

the court has not reached a disposition on the merits of the underlying claim).

## IV. <u>CONCLUSION</u>

Based on the foregoing, it is ORDERED that Defendant Safeway's Motion for Summary Judgment (Doc. # 18) be GRANTED.

FURTHER ORDERED that Mr. Gluhic's Public Policy Discharge Claim is DISMISSED WITHOUT PREJUDICE.  All other claims are DISMISSED WITH PREJUDICE.

DATED:  March   28  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge